UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CLINT HORVATT,

      Petitioner,

v.                                 Case No. 3:14-cv-869-J-34JBT

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

      Respondents.

_____

## ORDER

### I. Status

Petitioner Clint Horvatt, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus By a Person in State Custody (Petition, Doc. 1). He later amended his Petition (Am. Petition, Doc. 8) and filed exhibits identified by letters (Pet. Ex.). Horvatt challenges his 2010 state court (Putnam County) conviction for principal to first degree murder with a firearm. Respondents filed a Response to Petition (Response, Doc. 12) and filed exhibits identified by letters (Resp. Ex.). Horvatt replied (Reply, Doc. 13) and filed exhibits identified by letters (Reply Ex.). This case is ripe for review.

### II. Procedural History

The State of Florida charged Horvatt by indictment with one offense: principal to first degree murder with a firearm. See Resp. Ex. A. Following a trial that began on November 1, 2010, and ended on November 4, 2010 (see Resp. Ex. B), a jury found Horvatt guilty as charged, see Resp. Ex. B at 956-57. The Court sentenced him to life in the custody

of the Florida Department of Corrections.  <u>See</u> Resp. Ex. C.  Horvatt filed a timely notice of appeal.  <u>See</u> Resp. Ex. D.

On Horvatt's behalf, the Office of the Public Defender filed an initial brief (<u>see</u> Resp. Ex. E) in accordance with <u>Anders v. California</u>, 386 U.S. 738 (1967), and an accompanying motion to withdraw.  <u>See</u> Resp. Ex. F.  Consistent with the <u>Anders</u> protocol, Horvatt filed a pro se initial brief.  <u>See</u> Resp. Ex. I.  On August 9, 2011, Florida's Fifth District Court of Appeal (Fifth DCA) affirmed his conviction and sentence per curiam. <u>See</u> Resp. Ex. K; <u>see also</u> <u>Horvatt v. State</u>, 5D10-4206, 2011 WL 3557176 (Fla. 5th DCA Aug. 9, 2011).  The Fifth DCA issued the mandate on August 31, 2011.  <u>See</u> Resp. Ex. L.

Horvatt filed a motion for postconviction relief and a memorandum of law on February 20, 2012.[1]  In the motion, he asserted five claims of ineffective assistance of trial counsel. The State responded.  <u>See</u> Resp. Ex. O.  On January 29, 2013, the state circuit court summarily denied grounds one, two, four, and five, and set an evidentiary hearing to consider ground three.  Resp. Ex. P.  The court held the evidentiary hearing on July 12, 2013, at which counsel represented Horvatt.  <u>See</u> Resp. Ex. Q.  On August 26, 2013, the court entered an order denying relief on ground three.  <u>See</u> Resp. Ex. R.  Horvatt filed a timely notice of appeal, <u>see</u> Resp. Ex. S, and a pro se initial brief with the Fifth DCA challenging the denial of each claim, <u>see</u> Resp. Ex. T.  The State filed an answer brief. <u>See</u> Resp. Ex. U.  On May 20, 2014, the Fifth DCA affirmed per curiam the circuit court's

---

[1] Applying the prison mailbox rule, the Court finds that Horvatt effectively filed his pro se pleadings filed on the date he handed them to the prison authorities for mailing to this Court. <u>See</u> Rule 3(d), Rules Governing Section 2254 Cases in the United States District Courts.

denial of Horvatt's motion for postconviction relief.  <u>See</u> Resp. Ex. V; <u>Horvatt v. State</u>, 141 So. 3d 194 (Fla. 5th DCA 2014) (table).  Horvatt filed a motion for rehearing, which the Fifth DCA denied.  <u>See</u> Resp. Ex. W, X.  The court issued the mandate on July, 8, 2014. <u>See</u> Resp. Ex. Y.

Horvatt filed a second pro se motion for postconviction relief on January 24, 2014. <u>See</u> Resp. Ex. Z.  In the second motion, he asserted two claims of newly discovered evidence.  The circuit court dismissed the second motion on October 3, 2014, for failure to comply with Florida Rule of Criminal Procedure 3.030, but gave Horvatt leave to amend within thirty days.  <u>See</u> Resp. Ex. AA.  Horvatt filed an amended second motion on October 17, 2014.  <u>See</u> Resp. Ex. BB.  The State filed a response.  <u>See</u> Resp. Ex. CC. Horvatt replied.  <u>See</u> Resp. Ex. DD.  On March 2, 2015, the circuit court entered an order summarily denying the motion.  <u>See</u> Resp. Ex. EE.  Horvatt filed a timely notice of appeal, <u>see</u> Resp. Ex. FF, a pro se initial appellate brief, <u>see</u> Resp. Ex. GG, and an unauthorized supplemental brief with the Fifth DCA, <u>see</u> Resp. Ex. II.  On July 7, 2015, the Fifth DCA affirmed the denial of the second postconviction motion per curiam.  <u>See</u> Resp. Ex. JJ; <u>see also</u> <u>Horvatt v. State</u>, 171 So. 3d 736 (Fla. 5th DCA 2015) (table).  Horvatt filed a motion for rehearing/clarification, <u>see</u> Resp. Ex. KK, which the court denied, <u>see</u> Resp. Ex. LL.  The Fifth DCA issued the mandate on August 25, 2005.  <u>See</u> Resp. Ex. MM.

### III.  <u>Evidentiary Hearing</u>

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing.  <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011).  "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas

relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Horvatt's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## IV. Exhaustion and Procedural Default

### A. Exhaustion

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b), (c). To exhaust state remedies, the petitioner must "fairly present[ ]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). As the United States Supreme Court has explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

To fairly present a claim, the petitioner must present it to the state courts as a federal, constitutional claim rather than as a matter of state law. See Duncan, 513 U.S. at 365-66; Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 456-59 (11th Cir. 2015). To do so, a petitioner can include "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin, 541 U.S. at 32. But raising a state law claim that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Duncan, 513 U.S. at 366. Likewise, merely citing to the federal constitution is insufficient to exhaust a claim in state court. Anderson v. Harless, 459 U.S. 4, 7 (1982); see also McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) ("'The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'") (quoting Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317, 1343-44 (11th Cir. 2004)). As explained by the Eleventh Circuit:

> To "fairly present" a claim, the petitioner is not required to cite "book and verse on the federal constitution." Picard v. Connor, 404 U.S. 270, 278, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971) (quotation omitted). Nevertheless, a petitioner does not "fairly present" a claim to the state court "if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin, 541 U.S. at 32, 124 S. Ct. 1347. In other words, "to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present

> federal constitutional issues." Jimenez v. Fla. Dep't of Corr.,
> 481 F.3d 1337, 1342 (11th Cir. 2007) (quoting Snowden v.
> Singletary, 135 F.3d 732, 735 (11th Cir.1998)) (concluding
> that the petitioner's claims were raised where the petitioner
> had provided enough information about the claims (and
> citations to Supreme Court cases) to notify the state court that
> the challenges were being made on both state and federal
> grounds).

Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1352 (11th Cir. 2012). "The crux of the

exhaustion requirement is simply that the petitioner must have put the state court on

notice that he intended to raise a federal claim." Preston, 785 F.3d at 457 (11th Cir.

2015); see also French v. Warden, Wilcox State Prison, 790 F.3d 1259, 1270-71 (11th

Cir. 2015), cert. denied, 136 S. Ct. 815 (2016).

## B. Procedural Default and Exceptions

"[W]hen 'the petitioner fails to raise the [federal] claim in state court and it is clear

from state law that any future attempts at exhaustion would be futile,'" a procedural default

occurs. Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quotation

omitted); see also Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001) ("The teeth of

the exhaustion requirement comes from its handmaiden, the procedural default

doctrine."). In such circumstances, federal habeas review of the claim is typically

precluded. Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012); Smith,

256 F.3d at 1138. Nevertheless, a federal court may still consider the claim if a state

habeas petitioner can show either (1) cause for and actual prejudice from the default; or

(2) a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750

(1991); Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010).

To show cause for a procedural default, "the petitioner must demonstrate 'some

objective factor external to the defense' that impeded his effort to raise the claim properly

in state court." Id. at 1157 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  "[T]o show prejudice, a petitioner must demonstrate that 'the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness.'" Id. (quoting McCoy v. Newsome, 953 F.2d 1252, 1261 (11th Cir. 1992) (per curiam)).

In the absence of a showing of cause and prejudice, a petitioner may obtain consideration on the merits of a procedurally defaulted claim if he can establish that a failure to consider the claim will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 724.  This exception has been described as "exceedingly narrow in scope as it concerns a petitioner's 'actual' innocence rather than his 'legal' innocence."  Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).  "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense."  Id. (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)), cert. denied, 535 U.S. 926 (2002)).  Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial."  Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).  With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected.  Schlup, 513 U.S. at 324.

## V. <u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus.  See 28.U.S.C. § 2254; Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016).  "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error

correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc), cert. granted, Wilson v. Sellers, 137 S. Ct. 1203 (2017); Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011); see also Johnson v. Williams, 568 U.S. 289, --, 133 S. Ct. 1088, 1096 (2013).[2] Thus, the state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Richter, 562 U.S. at 100; Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002).

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim, unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable

---

[2] The presumption is rebuttable and may be overcome "when there is reason to think some other explanation for the state court's decision is more likely." Richter, 562 U.S. at 99-100; see also Williams, 568 U.S. at --, 133 S. Ct. at 1096-97. However, "the Richter presumption is a strong one that may be rebutted only in unusual circumstances." Williams, 133 S. Ct. at 1096.

determination of the facts in light of the evidence presented in the state court proceeding."

28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 98.  The Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions.  As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause.  The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion).  The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  <u>Id.</u>
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations.  Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence."  <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); <u>accord</u> <u>Brumfield v. Cain</u>, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015).  Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3]  <u>Titlow</u>, 571 U.S. at ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

---

[3] The Eleventh Circuit has previously described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky."  <u>Clark v. Att'y Gen., Fla.</u>, 821 F.3d 1270, 1286 n.3 (11th Cir. 2016); <u>see also</u> <u>Landers</u>, 776 F.3d at 1294 n.4; <u>Cave v. Sec'y, Dep't of Corr.</u>, 638 F.3d 739, 744-47 & n.4, 6 (11th Cir. 2011); <u>Jones v. Walker</u>, 540 F.3d at 1277, 1288 n.5.

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016); see also Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1259 (11th Cir. 2016). Notably, the Supreme Court has instructed that "[i]n order for a state court's decision to be an unreasonable application of [that] Court's case law, the ruling must be 'objectively unreasonable, not merely wrong; even clear error will not suffice.'" Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017) (quoting Woods v. Donald, 575 U.S. ---, ---, 135 S. Ct. 1372, 1376 (2015) (per curiam) (internal quotation marks omitted)). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (regarding § 2254(d)(1)); Landers v. Warden, Att'y Gen. of Ala., 776 F.3d 1288, 1295 (11th Cir. 2015) (regarding § 2254(d)(2)).

Where the state court's adjudication on the merits is "'unaccompanied by an explanation,' a petitioner's burden under section 2254(d) is to 'show [ ] there was no reasonable basis for the state court to deny relief.'" Wilson, 834 F.3d at 1235 (quoting Richter, 562 U.S. at 98). Thus, "a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." Richter, 562 U.S. at 102; see also Wilson, 834 F.3d at 1235; Marshall, 828 F.3d at 1285. To determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a state trial court's previous opinion as one example of a reasonable application of law or determination of fact. Wilson, 834 F.3d at 1239; see also Butts v. GDCP Warden, 850 F.3d 1201, 1204 (11th Cir. 2017). However, in Wilson,

the en banc Eleventh Circuit stated that the federal habeas court is not limited to assessing the reasoning of the lower court.[4] 834 F.3d at 1239. As such,

> even when the opinion of a lower state court contains flawed reasoning, [AEDPA] requires that [the federal court] give the last state court to adjudicate the prisoner's claim on the merits "the benefit of the doubt," Renico [v. Lett, 449 U.S. 766, 733 (2010)] (quoting [Woodford v. Visciotti, 537 U.S. 19, 24 (2002)]), and presume that it "follow[ed] the law," [Woods v. Donald, --- U.S. ---, 135 U.S. 1372, 1376 (2015)] (quoting Visciotti, 537 U.S. at 24).

Id. at 1238; see also Williams, 133 S. Ct. at 1101 (Scalia, J., concurring). Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Titlow, 134 S. Ct. at 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). "If this standard is difficult to meet, that is because it was meant to be." Richter, 562 U.S. at 102.

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

---

[4] Although the Supreme Court has granted Wilson's petition for certiorari, the "en banc decision in Wilson remains the law of the [Eleventh Circuit] unless and until the Supreme Court overrules it." Butts, 850 F.3d at 1205 n.2.

To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Finally, "the standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at 105. "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional

assistance.'"  Daniel, 822 F.3d at 1262 (quoting Strickland, 466 U.S. at 689).  "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance."  Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold."  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted).  If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105.  As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VII. Findings of Fact and Conclusions of Law

Horvatt raises eight claims in his Amended Petition, although he lists only four grounds because he combines five claims under ground three.  Rather than addressing the claims in the order Horvatt presents them in his Amended Petition, the Court will address first the five claims that he raised in his first motion for postconviction relief in state court (see Resp. Ex. M) before turning to the three claims that Horvatt presented in his second or successive motion for postconviction relief (see Resp. Exs. Z, BB).

**A. Claims Presented in Horvatt's First Motion for Postconviction Relief**

**1. Ground Three (b)**

As ground three (b), Horvatt asserts that his counsel was ineffective for failing to move for a change of venue even after the prosecutor expressed concerns. Am. Petition at 9; Pet. Ex. D. Specifically, Horvatt faults counsel for not raising any objection to the trial remaining in Putnam County. See Reply at 6. Horvatt exhausted this claim by raising it in his first motion for postconviction relief as ground one and again on appeal. See Resp. Exs. M at 3; N at 4-5; T at 2, 4-25.

Before summarily denying this claim, the circuit court set forth the general Strickland standard. Resp. Ex. P. at 1-2. When applying Strickland in the context of counsel's failure to move for a change of venue, the prejudice prong requires a petitioner to "bring forth evidence demonstrating that there is a reasonable probability that the trial court would have, or at least should have, granted a motion for change of venue if [defense] counsel had presented such a motion to the court." Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000); see also State v. Knight, 866 So. 2d 1195, 1209 (Fla. 2003); Provenzano v. Dugger, 561 So. 2d 541, 545 (Fla.1990). Thus, when considering the prejudice prong of Strickland here, the Court must determine whether a hypothetical motion for change of venue would have been granted. See Meeks, 216 F.3d at 961; Knight, 866 So. 2d at 1209; Provenzano, 561 So. 2d at 545.

To warrant a change of venue, Horvatt must show either a presumption of juror prejudice or actual prejudice that infected his jury. See Skilling v. United States, 561 U.S. 358, 367 (2010) (holding that the defendant failed to establish either a presumption of juror prejudice or actual bias that infected his jury); Meeks, 216 F.3d at 961 ("A defendant

is entitled to a change of venue if he can demonstrate either 'actual prejudice' or 'presumed prejudice.'"). According to the Florida Supreme Court,

> [t]he test for determining a change of venue is whether the general state of mind of the inhabitants of a community is so infected by knowledge of the incident and accompanying prejudice, bias, and preconceived opinions that jurors could not possibly put these matters out of their minds and try the case solely on the evidence presented in the courtroom.

Rolling v. State, 695 So.2d 278, 284 (Fla.1997) (quotation omitted) (quoted in Knight, 866 So. 2d at 1209)). The Florida Supreme Court has also explained:

> When a motion for change of venue is filed a trial court should evaluate "(1) the extent and nature of any pretrial publicity; and (2) the difficulty encountered in actually selecting a jury." Id. at 285. Furthermore, the existence of pretrial publicity in a case does not necessarily lead to an inference of partiality or require a change of venue; rather, pretrial publicity must be examined with attention to a number of circumstances, including (1) when the publicity occurred in relation to the time of the crime and the trial; (2) whether the publicity was made up of factual or inflammatory stories; (3) whether the publicity favored the prosecution's side of the story; (4) the size of the community exposed to the publicity; and (5) whether the defendant exhausted all of his peremptory challenges in seating the jury. See Foster v. State, 778 So. 2d 906, 913 (Fla. 2001); Rolling, 695 So. 2d at 285. Furthermore, decisions on a motion for a change of venue are firmly within the trial court's discretion and will not be overturned on appeal absent a palpable abuse of discretion. Kearse v. State, 770 So. 2d 1119, 1124 (Fla. 2000).

Knight, 866 So. 2d at 1209.

In summarily rejecting Horvatt's claim in ground one, the circuit court stated:

> There is no record evidence of any extensive or inflammatory pre-trial publicity, or any other improper influence on the jury. In the case at bar, 35 potential jurors were questioned as to whether they had any knowledge of the Defendant's case and the circumstances surrounding it. They were all asked what, if anything, would influence their decision as to the Defendant's guilt or innocence. Four (4) of the 35 questioned,

answered that they had heard about the Defendant's case on the news. One of those four (4) said she also knew the Defendant. None of these four (4) was selected to serve on the jury, nor as an alternate.[5]

Additionally, the jurors chosen were all asked in various forms of questioning whether they could render an impartial verdict or whether there was anything that might possibly influence their decision as a juror. All the jurors answered in various ways that they could render an impartial verdict for the Defendant and also that they would not be influenced by anything when rendering a verdict. The State represented that it specifically spoke to the Defense about the possibility of a venue change out of Putnam County. The record does not show that the Defense raised any objection to the trial remaining in Putnam County. Apparently the Defendant was satisfied with the jurors selected since he did not use all of his peremptory challenges. (See Collective Appendix A, Jury Selection).

The State cites <u>Knight v. State</u>, 866 So. 2d 1195, 1209 (Fla. 2003) (quoting <u>Meeks v. Monroe</u>, 216 F.3d 951, 961 (11th Cir. 2000), <u>Rolling v. State</u>, 695 So. 2d 278, 284 (Fla. 1997) and <u>McCaskill v. State</u>, 344 So. 2d 1276, 1278 (Fla. 1977)) and <u>Provenzano v. State</u>, 561 So. 2d 541 (Fla. 1990).

Using the standards set forth in <u>Knight</u> and <u>Provenzano</u>, the record upon which the Defendant's motion is based, clearly fails to establish a reasonable probability that the Trial Court should have granted a Motion for change of venue (if one had been filed). Thus, Ground One is denied.

Resp. Ex. P at 2-3. Without written opinion, the Fifth DCA affirmed the circuit court's denial of this claim per curiam. Resp. Ex. V.

The state circuit court's application of the law is consistent with the precedents applying <u>Strickland</u> in this context. See <u>Meeks</u>, 216 F.3d at 961; <u>see also</u> <u>Knight</u>, 866 So.

---

[5] The trial court excused two of these potential jurors for cause (<u>see</u> <u>id.</u> at 24, 182), and the defense used peremptory strikes to exclude the other two potential jurors (<u>see</u> <u>id.</u> at 186-87, 191).

2d at 1209; <u>Provenzano</u>, 561 So. 2d at 545. The record demonstrates that the jury was not infected by knowledge of the incident, let alone prejudice, bias, or preconceived opinions.[6] <u>See</u> Resp. Ex. P at 2-3; <u>see also</u> Resp. Ex. B at 5-24, 182, 186-87, 191. Nothing in the record warrants a presumption of prejudice, as Horvatt has not presented any evidence of extraordinary local prejudice that would have prevented a fair trial. <u>See</u> <u>Skilling</u>, 561 U.S. at 378, 380-81. As such, "it is most unlikely that a change of venue would have been granted because there were no undue difficulties in selecting an impartial jury." <u>Provenzano</u>, 561 So. 2d at 545. Even if counsel had moved to change the venue, Horvatt has not demonstrated a reasonable probability that the court would have granted the motion. Horvatt cannot demonstrate prejudice under <u>Strickland</u> where counsel failed to file a meritless motion. <u>See</u> <u>Meeks</u>, 216 F.3d at 961. As such, the state court's decision to deny Horvatt's <u>Strickland</u> claim for failing to move for a change of venue is neither contrary to, nor an unreasonable application of, clearly established federal law. Also, the state court's decision did not rely on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Applying the deference due under AEDPA to the state court's determination, the claim in ground three (b) is due to be denied.

---

[6] Contrary to Horvatt's assertions, <u>see</u> Reply at 6-7, his unused peremptory challenges and ultimate composition of the jury are relevant to determining whether a motion for a change of venue would have been granted. <u>See</u> <u>Knight</u>, 866 So. 2d at 1209; <u>see also</u> <u>Skilling</u>, 561 U.S. at 387 (considering the adequacy of jury selection when determining whether actual prejudice infected the jury).

## 2. **Ground Three (c)**

As ground three (c), Horvatt contends that counsel was ineffective for failing to move for a second competency hearing after he mutilated himself in open court on March 31, 2010. Am. Petition at 9; Pet. Ex. E; Reply at 7-9. In his first motion for postconviction relief, Horvatt raised a less specific version of this claim in that he asserted generally that counsel failed to investigate or move for a competency hearing "prior to trial." See Resp. Ex. M at 4; N at 6-8. In summarily denying this claim, the trial court set forth the Strickland standard and held:

> This ground fails. The Defendant was a patient of and was seen numerous times by Dr. Umesh M. Mhatre inside Putnam County Jail. A competency evaluation was in fact conducted by Dr. Mhatre prior to trial. The Defendant was found competent to proceed in every evaluated category relating to competency. (See Appendix B, Competency Evaluation). After these results, Trial Counsel was not ineffective for not moving for a competency hearing. Therefore, Ground Two is denied.

Resp. Ex. P at 3. On appeal from the denial of his first postconviction motion, Horvatt articulated the specific claim that counsel should have arranged for a second competency evaluation after his March 31, 2010, act of self-mutilation. See Resp. Ex. T at 2, 25-29. Without written opinion, the Fifth DCA per curiam affirmed the circuit court's denial of this claim. Resp. Ex. V.

The test for determining competence to stand trial is "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402 (1960). Counsel has the duty "to make reasonable investigation into petitioner's competency" or "to make a

reasonable decision that such investigation was unnecessary." Futch v. Dugger, 874 F.2d 1483, 1487 (11th Cir. 1989); see also Pardo v. Sec'y, Florida Dep't of Corr., 587 F.3d 1093, 1102 (11th Cir. 2009). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 1102 (citing Strickland, 466 U.S. at 691). The reasonableness of counsel's performance must be considered "from counsel's perspective at the time." Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (quoting Strickland, 466 U.S. at 690). Also, "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." Strickland, 466 U.S. at 691. In addition,

> [i]n order to demonstrate prejudice from counsel's failure to investigate his competency, [a] petitioner has to show that there exists "at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial."

Futch, 874 F.2d at 1487 (quoting Alexander v. Dugger, 841 F.2d 371, 375 (11th Cir. 1988)).

At defense counsel's request, Dr. Umesh M. Mhatre examined Horvatt on January 31, 2010, to evaluate: (1) sanity at the time of the alleged offense; (2) competency to proceed; and (3) whether he meets the criteria for involuntary hospitalization. See Resp. Ex. P at 284-90. Dr. Mhatre noted that Horvatt had no prior history of inpatient psychiatric care, but that he reportedly attempted suicide while incarcerated in the past by overdosing on medication, cutting his wrists, and hanging himself. See id. at 286. Dr. Mhatre also opined that Horvatt's current suicidal threats appeared to be manipulative in nature. See

id. at 288; see also id. at 286, 287. He reported that Horvatt appeared to have an underlying personality disorder with anti-social traits, as well as great difficulty adjusting to incarceration, which resulted in "manipulative and malingering behavior." Id. at 288, 289, 290. With respect to competency, Dr. Mhatre opined that Horvatt was competent to proceed, "however, he has been very passive/aggressive and manipulative and often giving bizarre responses to the questions for whatever benefit he thinks that he will derive from it." Id. at 289. Finally, Dr. Mhatre concluded that "Horvatt is felt to be competent, though he clearly is malingering and manipulative, and would appear to want to be declared incompetent." Id. at 290.

Two months later, Horvatt contends that he cut himself with a razor blade while attending a pretrial proceeding in the courthouse on March 31, 2010. See Resp. Exs. T at 26; N at 47-48. Now, he asserts that his counsel should have reinvestigated his competency after this act of self-mutilation. Before the state circuit court, Horvatt did not articulate specifically that his claim of ineffectiveness related to the time period after March 31, 2010, but even assuming that he fully exhausted his claim, it nevertheless fails. Applying double deference under Strickland and AEDPA, the Court presumes that counsel fulfilled his professional responsibility and reasonably determined that a second competency examination was not warranted by Horvatt's March 31, 2010, act of self-mutilation, especially given Dr. Mhatre's strong opinion that Horvatt was manipulative and malingering on January 31, 2010. See Chandler, 218 F.3d at 1325 ("In short, trial counsel, based on his professional judgment as an experienced trial lawyer, determined (or some reasonable lawyer could have) that" a competency evaluation was not warranted.) In addition, Horvatt fails to carry his burden of showing a reasonable

probability that a second psychological evaluation would have revealed that he was incompetent to stand trial, and he cannot show prejudice under Strickland. See Futch, 874 F.2d at 1487.

Upon review of the record, the Court determines that the state court's decision to deny Horvatt's Strickland claim for failing to move for a second competency examination after his act of self-mutilation is neither contrary to, nor an unreasonable application of, clearly established federal law. Also, the state court's decision did not rely on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. As such, applying the deference due under AEDPA, the claim in ground three (c) is due to be denied.

### 3. Ground Three (d)

As ground three (d), Horvatt asserts that trial counsel was ineffective for failing to pursue an involuntary intoxication defense. Am. Petition at 10; Pet. Ex. F; Reply at 9-10. Horvatt exhausted this claim by raising it in his first motion for postconviction relief as ground four and again on appeal. See Resp. Ex. M at 6; N at 12-13; Resp. Ex. T at 3, 34-38. In summarily denying this claim, the trial court set forth the Strickland standard and found:

> There is nothing in the record nor does the Defendant present any evidence that he actually consumed drugs (Xanax) or that he was forced to consume drugs which allegedly caused him to commit murder. This argument would have undermined the Defense's chosen strategy. Thus, Ground Four is denied.

Resp. Ex. P at 4-5. Without written opinion, the Fifth DCA affirmed the circuit court's denial of this claim per curiam. Resp. Ex. V.

Although Horvatt attaches documents purporting to show that he was prescribed Xanax, nothing in the record supports a claim that he was involuntarily intoxicated at the time of the crime.[7]  Moreover, Horvatt's primary theory of defense was that he was an uninvolved bystander to his girlfriend's drug deal that morphed into a robbery and her murder.  With that theory of defense, an involuntary intoxication instruction would have been irrelevant.  Counsel is not ineffective for failing to request an intoxication instruction when the instruction would be inconsistent with the defendant's theory of the case.  See Hunt v. Comm'r, Ala. Dep't of Corr., 666 F.3d 708, 726-27 (11th Cir. 2012); Harich v. Dugger, 844 F.2d 1464 (11th Cir. 1988), overruled on other grounds by Davis v. Singletary, 119 F.3d 1471 (11th Cir. 1997).  As such, the state court's decision to deny Horvatt's Strickland claim for failing to pursue an involuntary intoxication defense is neither contrary to nor an unreasonable application of clearly established federal law.  Also, the state court's decision did not rely on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  As such, applying the deference due under AEDPA, the claim in ground three (d) is due to be denied.

### 4.  Ground Three (e)

As ground three (e), Horvatt contends that counsel was ineffective for failing to put the state's case through proper adversarial testing.  See Am. Petition at 10; Reply at 10-11.  Horvatt exhausted this claim by raising it in his first motion for postconviction relief as ground five and again on appeal.  See Resp. Ex. M at 7; N at 14-16; Resp. Ex. T at 4-5,

---

[7] Although Horvatt attaches an excerpt from the victim's mother's deposition where she testified that her daughter told her that Horvatt acted weird and took Xanax before the murder (see Reply Ex. A), this is insufficient to carry his burden of showing involuntary intoxication at the time of the crime.

39-44.  In summarily denying relief as to this claim, the trial court set forth the Strickland standard and held:

> The defendant in his Motion fails to identify what evidence would have been discovered had Trial Counsel interviewed or deposed certain parties.  The Defendant's claims, including failure to call witnesses are vague and lack supporting evidence.  The same can be said about Defendant's claim that Trial Counsel failed to make pre-trial Motions.  Other than the Motions Trial Counsel actually made, it is unclear what Motions the Defendant intended to make.  As for the Defendant's claim that he was erroneously told not to take the stand, the record shows that the Defendant answered that he was satisfied with Trial Counsel and the way his case was being defended and that he understood he was not required to take the stand if he did not want to testify, thus implying that he agree[d] with the strategy of not taking the stand.  (See Collective Appendix D, Trial Transcript pages 948, 819-822).  Thus Ground Five is denied.

Resp. Ex. P at 4.  Without written opinion, the Fifth DCA affirmed the circuit court's denial of this claim per curiam.  Resp. Ex. V.

The record fully supports the factual findings made by the state circuit court and affirmed by the Fifth DCA.  As such, the state court's decision to deny Horvatt's Strickland claim for failing to put the state's case through proper adversarial testing is neither contrary to, nor an unreasonable application of, clearly established federal law.  Also, the state court's decision did not rely on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  As such, applying the deference due under AEDPA, the claim in ground three (e) is due to be denied.[8]

---

[8] Even if the state court's decision were not entitled to deference, Horvatt's claim would fail because it is too vague and conclusory to support an ineffective-assistance-of-counsel claim.  See Caderno v. United States, 256 F.3d 1213, 1217 (11th Cir. 2001); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991).

## 5. <u>Ground Four</u>

As ground four, Horvatt asserts that counsel was ineffective for failing to argue the independent act doctrine. Am. Petition at 12; Pet. Ex. I; Reply at 12-15. He exhausted this claim by presenting it in his first motion for postconviction relief as ground three. <u>See</u> Resp. Ex. M at 5; N at 9-11. Although he originally asserted that his counsel did not push the trial court to read the independent act jury instruction to the jury, his postconviction counsel clarified at the evidentiary hearing that his contention was that his attorneys failed to develop the independent act doctrine in the testimony or the closing argument. <u>See</u> Resp. Ex. Q at 7-8. Following the evidentiary hearing held, the court concluded:

> Defendant claims in his Rule 3.850 motion that Trial Counsel did not push to have the "independent act doctrine" jury instruction read to the jury. The record clearly demonstrates that the Judge read the instruction. Additionally, if Trial Counsel had pursued the "independent act doctrine" in more detail, it would have seriously contradicted the other defense strategy that Defendant had nothing to do with Summer's murder. Credible testimony was presented by two of Defendant's attorney's that he did not want to be portrayed as part of any conspiracy in any manner whatever.
>
> In applying the two prong test from <u>Strickland</u> above, the Court concludes that Trial Counsel provided reasonably competent performance and that the outcome of the proceedings were not compromised. Thus Ground Three is denied.

Resp. Ex. R. Horvatt raised this claim again on appeal. Resp. Ex. T at 3, 29-34. Without written opinion, the Fifth DCA per curiam affirmed the circuit court's denial of this claim. Resp. Ex. V.

Florida's Fifth DCA has described the "independent act" doctrine as follows:

> The "independent act" doctrine applies "when one cofelon, who previously participated in a common plan, does not participate in acts committed by his cofelon, 'which fall outside

> of, and are foreign to, the common design of the original
> collaboration.'" Ray v. State, 755 So. 2d 604, 609 (Fla. 2000)
> (quoting Dell v. State, 61 So. 2d 1305, 1306 (Fla. 3d DCA
> 1995)). Under this limited exception, a codefendant is not
> punished for the independent act of a cofelon who exceeds
> the scope of the original criminal plan. Id. However, when the
> codefendant was a willing participant in the underlying felony
> and the murder was committed to further the original criminal
> plan, the codefendant is not entitled to an independent act
> instruction. See id.; Lovette v. State, 636 So. 2d 1304, 1306
> (Fla. 1994)).

Roberts v. State, 4 So. 3d 1261, 1263 (Fla. 5th DCA 2009). Given testimony at trial that

Horvatt had previously approached a friend about killing Horvatt's girlfriend, the

independent act doctrine would have been relevant to a theory of defense based on

Horvatt abandoning a plan to kill his girlfriend but Foster continuing with the murder as an

independent act. As the circuit court noted when denying Horvatt's claim on

postconviction review, the trial court instructed the jury on the independent act doctrine

as follows:

> If you find that the first-degree murder was an independent act
> of William Dewey Foster, a/k/a Bill Foster, then you should
> find Clint Gerard Horvatt not guilty of the crime of principal to
> first-degree murder or any other crime.

Resp. Ex. B at 875. In closing arguments, Horvatt's attorney mentioned the independent

act theory:

> Independent act, which the defendant did not intend to occur.
> Well, you saw the photo of Summer Smith. You heard the
> testimony of the doctor. The bullet entered the right side of
> the head. It ended up on the left side of the head, which
> means she was sitting in the car. And I think there was
> testimony from Chris Middleton that Clint was 18 inches away
> from her. So if the bullet came in here and ended up over
> here, where was Clint?
>
> She was shot by a .22 Magnum, Winchester. Something – a
> bullet – a projectile that can travel 1,900 foot per second,

accurate at 125 to 150 yards, which is a foot – football field and a half.

Would you put yourself in the line of fire either intentionally or negligently? Because guess what? If that misses or goes through, you're a goner. That person right there is a goner. Who would do that?

Id. at 924-25. In this part of his argument, counsel appears to suggest that Foster must have independently exceeded the scope of any criminal plan because Horvatt would not have agreed to a plan that would put himself in harm's way. Counsel also argued that "[t]here's no evidence that Foster didn't do this on his – on his own."[9] Id. at 922.

At the postconviction evidentiary hearing, the testimony of Horvatt's counsel shed light on their strategy during trial and closing arguments. One of his lawyers explained their decisionmaking regarding the theory of defense:

[W]e settled on making this our story to the jury, our theory of the case that this was a drug deal that went bad. And, you know, we did know that there was indications that perhaps there had been a conspiracy at some point in time, and that conspiracy had been terminated.

. . .

[M]y understanding was Mr. Horvatt did not want to acknowledge in any way that he was involved in any kind of conspiracy to harm her or to kill her or to harm her in any way. That in fact on that day they were simply going to Gainesville to go shopping. And on the way she spotted this vehicle that she recognized and advised Mr. Horvatt to pull in behind it. And then we know what happened next.

. . .

[W]hen you raise an affirmative defense like independent act, as you've pointed out, one of the things you have to do is

---

[9] During closing argument, counsel primarily focused on the theory of defense that had been developed throughout the trial, which was that whoever shot Horvatt's girlfriend did so unexpectedly as part of a robbery, not pursuant to any agreement with Horvatt.

admit that you were involved in some kind of a conspiracy to do an illegal deed. He . . . consistently denied that he was involved in any conspiracy or in any plan to do any criminal deed that day, at that time.

And in order for us to raise and argue independent act, we're gonna have to tell the jury or at least tacitly let the jury come to believe that he was in fact involved in an illegal acct, and that the illegal act got out of control by virtue of his codefendant or co-conspirator doing something that he didn't plan.

I don't believe a defense attorney can admit to the jury on his client's behalf something that would incriminate him when he has said I don't want to be incriminated in that way. He told us he didn't want to be implicated in any kind of conspiracy to do that or to be involved in a criminal act that day.

Now, you know, the state was able to bring out in their case in chief that he was at one point in time involved in a conspiracy. And them having done that I think certainly justifies us asking for the criminal act instruction, but it doesn't justify us trying to make it a central feature of the case.

If we had made it a central feature of the case . . . it would have turned into a bloodbath. I mean, it was bad enough already. The state had overwhelming evidence against him. They had, you know, the belt cam and they had statements and they had absolute proof that he had lied about who the person was, about he knew who the person was. I mean, there were just so many things.

If we had gone into and tried to make this conspiracy to kill her, that he withdrew – I believe he withdrew from it. I mean, I do. But if we had tried to make that a feature, I think it would have just made it worse.

. . .

[I]f you try to bring inconsistent defenses, and even if you get away with it, even if for some reason the state doesn't object and you get a ruling from the judge and you get to present that to the jury, now you've got a jury that's confused. Well, which is it, is he innocent because it was an independent act, or is he innocent because he was just giving his girlfriend a ride to the mall and she said let's pull over here and buy some dope.

> I mean, that's disastrous. You're not creating reasonable
> doubt that would lead them to think he's innocent. You're
> creating reasonable doubt that would make the jury think he's
> lying to them. And so no, I don't believe it would have been
> an effective strategy.

Resp. Ex. Q at 66-70. Horvatt's other attorney testified consistently. <u>See, e.g.</u>, <u>id.</u> at 9 ("Horvatt basically denied pretty much any – anything that would show any guilt on his part of doing anything"); 12 ("the theory of our case was that it was a drug deal gone bad . . . . and basically the independent act was put in there so the jury would have something maybe to latch on to if they didn't believe it was a drug deal gone bad or that Mr. Horvatt had something to do with it").

The question of whether an attorney's actions were the product of a strategic decision is an issue of fact, and the state court's decision on that issue is presumptively correct. <u>Provenzano v. Singletary</u>, 148 F.3d 1327, 1330 (11th Cir. 1998); <u>see also</u> <u>Chandler</u>, 218 F.3d at 1314, n.14 ("a court must not second-guess counsel's strategy."). Having chosen a reasonable defense strategy, Horvatt's counsel was not ineffective for not aggressively pursuing the independent act doctrine, especially when it would have been inconsistent with the chosen defense, and contrary to Horvatt's expressed desire to deny any involvement. <u>See</u> <u>Hunt</u>, 666 F.3d at 726-27. Given the attorneys' testimony at the evidentiary hearing, the Court finds no infirmity in the state circuit court's decision that neither deficient performance nor prejudice occurred under <u>Strickland</u> as a result of the attorneys' handling of the independent act theory at trial. The record fully supports the state circuit court's denial and the Fifth DCA's affirmance of this claim. As such, the state court's decision to deny Horvatt's <u>Strickland</u> claim for failing to argue the independent act doctrine is neither contrary to nor an unreasonable application of clearly established

federal law.  Also, the state court's decision did not rely on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  As such, applying the deference due under AEDPA and <u>Strickland</u>, the claim in ground four is due to be denied.

### B.  Claims Presented in Horvatt's Second or Successive Motion for Postconviction Relief

Horvatt's claims in grounds one, two, and three(a) are based on claims he asserted in his second or successive motion for postconviction relief in the state court.  Before addressing the claims in the federal Amended Petition itself, the Court will review their history in state court.

Horvatt filed a second or successive motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850(h)(1).  <u>See</u> Resp. Exs. Z, BB.  In the second or successive postconviction motion, Horvatt asserted two claims:  (1) newly discovered evidence showed that Detective John Merchant's testimony at the dispositive suppression hearing was not credible, and the State's failure to disclose the detective's disciplinary file violated <u>Brady v. United States</u>, 397 U.S. 742 (1970), due process, and equal protection; and (2) trial counsel was constitutionally ineffective for failing to investigate the detective's disciplinary file and use it at the suppression hearing, where the detective's credibility was at issue.  <u>See</u> Resp. Ex. Z at 4, 7, 8, 10.  The State responded (<u>see</u> Resp. Ex. CC), and Horvatt replied (<u>see</u> Resp. Ex. DD).  The state circuit court denied Horvatt's second or successive motion for postconviction relief and explained:

> Defendant claims that his Motions fall under the "newly discovered evidence" exception.
>
> **To qualify as newly discovered evidence, the evidence must be unknown to the Trial Court, by the party, or by**

**Counsel at the time of trial, and could not have been known with the use of due diligence. If this test is met, a court will then consider whether the newly discovered evidence is of such a nature as to probably produce an acquittal.** Wright v. State, 857 So. 2d 861 (Fla. 2003).

On Ground One, Defendant claims through due diligence he has obtained evidence that logically and conclusively proves that the lead investigative detective in his case should not have been believed nor given the judicial benefit of the doubt at the dispositive pre-trial suppression hearing. Specifically, Detective John Merchant's disciplinary file would show "an escalating pattern of immoral behavior unbecoming a member of law enforcement."

**The subsequent investigation of John Merchant does not meet the standard of newly discovered evidence** since the actions being investigated did not occur until several years after the trial in this case. Additionally, any charges filed against Merchant were ultimately dismissed and thus not admissible. **There was additional evidence of Defendant's guilt that was overwhelming. The second prong of the Wright test above has not been met.** For the same reason, Defendant's Brady claims, that the State did not produce Merchant's personnel file, have no merit because of the ultimate lack of relevancy. **Ground One is denied.**

On Ground Two, Defendant claims he was denied effective assistance of Counsel at the suppression hearing because Trial Counsel failed to secure evidence of Detective Merchant's disciplinary infractions.

In addition to the Wright test, the general test for ineffective assistance of Counsel was announced in Strickland v. Washington, 466 U.S. 668 (1984). Defendant bears the burden of pleading and proving (1) constitutionally deficient performance (2) resulting in actual prejudice to his case.

**Based on the reasons explained on Ground One, Defendant has not met any of the prongs in the Wright and Strickland tests. Ground Two is denied.**

Resp. Ex. EE at 2-3 (emphasis added). The record does not reflect that the circuit court attached any records to its order. See id.

Horvatt appealed the denial of his second or successive motion for postconviction relief to the Fifth DCA. <u>See</u> Resp. Exs. FF, GG, HH. As ground one of his initial appellate brief, Horvatt asserted that the circuit court erred by not attaching any records in violation of Florida Rule of Criminal Procedure 3.850(f)(5).[10] <u>See</u> Resp. Ex. GG at 2-4. As ground two, Horvatt contended that the circuit court erred by not holding an evidentiary hearing on his claims of newly discovered evidence and ineffective assistance of counsel. <u>See id.</u> at 5-7. He also asserted that the trial court erred in concluding that Detective Merchant's disciplinary record accrued entirely after Horvatt's trial. <u>Id.</u> at 5-6. Horvatt subsequently filed an unauthorized supplemental appellate brief, in which he asserted three additional issues on appeal.[11] <u>See</u> Resp. Ex. II. The Fifth DCA affirmed the denial of Horvatt's second or successive postconviction motion per curiam, without written opinion. Resp. Ex. JJ.

---

[10] "If the motion is legally sufficient but all grounds in the motion can be conclusively resolved either as a matter of law or by reliance upon the records in the case, the motion shall be denied without a hearing by the entry of a final order. If the denial is based on the records in the case, a copy of that portion of the files and records that conclusively shows that the defendant is entitled to no relief shall be attached to the final order." Fla. R. Crim. Pro. 3.850(f)(5) (2015).

[11] As ground three, he asserted that the circuit court erred on the merits in denying his claim that Detective Merchant should not have been afforded credibility at the suppression hearing. <u>See id.</u> at 3-10. As ground four, he contended that the circuit court erred on the merits in denying his claim of ineffective assistance of counsel with respect to obtaining Detective Merchant's file of disciplinary infractions. <u>See id.</u> at 11-15. As ground five, he asserted that the circuit court was biased and prejudiced by denying his motion for appointment of counsel prior to denying the substantive postconviction motion. <u>See id.</u> at 16-17.

## 1. <u>Grounds One and Two</u>

As ground one in the federal Amended Petition, Horvatt asserts that the circuit court committed reversible error and violated his due process rights by failing to attach portions of the record to the summary denial of his second motion for postconviction relief, in which he asserted claims of newly discovered evidence and ineffective assistance of counsel. <u>See</u> Am. Petition at 5; Pet. Ex. A; Reply at 2-3.  He also contends that the Florida appellate court should have remanded his case due to the circuit court's failure to attach records. <u>See</u> Pet. Ex. A at 3.  As ground two, he contends that the circuit court committed reversible error by failing to hold an evidentiary hearing on the claims he raised in his second motion for postconviction relief, namely, his claims of newly discovered evidence and ineffective assistance of counsel.  <u>See</u> Am. Petition at 8; Pet. Ex. B; Reply at 2-3. These are the same claims that he presented in his initial brief on appeal from the denial of his second or successive postconviction motion.[12]

Respondents contend that Horvatt's claims in grounds one and two are not cognizable in federal habeas review because they solely present challenges to the processes used by the circuit court in denying the second postconviction motion.  <u>See</u> Response at 10-11.  Respondents rely on the Eleventh Circuit's explanation that

> [f]ederal habeas relief is available to remedy defects in a defendant's conviction and sentence, but "an alleged defect in a collateral proceeding does not state a basis for habeas relief." <u>Quince v. Crosby</u>, 360 F.3d 1259, 1262 (11th Cir. 2004); <u>see also</u> <u>Carroll v. Sec'y, DOC</u>, 574 F.3d 1354, 1365 (11th Cir. 2009) (collecting cases), <u>cert. denied</u>, -- U.S. --, 130 S. Ct. 500, 175 L. Ed. 2d 355 (2009).  There is a valid reason behind this principle:  "[A] challenge to a state collateral

---

[12] Obviously, Horvatt could not have presented these two claims to the state circuit court because they did not arise until after the circuit court denied his claims without an evidentiary hearing.

> proceeding does not undermine the legality of the detention or imprisonment – i.e., the conviction itself – and thus habeas relief is not an appropriate remedy." Carroll, 574 F.3d at 1365.

Alston v. Dep't of Corr., Fla., 610 F.3d 1318, 1325-26 (11th Cir. 2010).

Federal habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991) (citations omitted). As such, federal habeas "does not lie for errors of state law." Id. at 67 (quotations omitted). At most, Horvatt asserts defects in state collateral proceedings based on state law, which do not undermine the legality of his conviction and do not state a basis for habeas relief. See Alston, 610 F.3d at 1325-26. Despite Horvatt's attempt to couch his claim in terms of due process, this Court may not review the claims because they are based exclusively on state law issues in collateral proceedings. See Branan, 861 F.2d at 1508. The claims in grounds one and two are due to be denied.

## 2. Ground 3(a)

As ground three(a), Horvatt contends that counsel was constitutionally ineffective by failing to present and/or investigate criminal acts, unprofessional acts, and disciplinary actions involving Detective Merchant. Horvatt contends that Detective Merchant physically assaulted him and coerced his confession. See Am. Petition at 9; Pet. Ex. at C; Reply at 5-6. Horvatt appears to raise the ineffective-assistance-of-counsel claim that he presented to the state circuit court as ground two in his second or successive motion for postconviction relief, where he claimed that counsel was ineffective at the suppression hearing for failing to secure evidence of Detective Merchant's disciplinary infractions. See Resp. Ex. Z. In denying ground two of the second or successive motion, the circuit court found that Horvatt's claim met neither the standard for newly discovered evidence under

<u>Wright</u> nor the standard for ineffective-assistance-of-counsel under <u>Strickland</u>. <u>See</u> Resp. Ex. EE. He also attempted to present this claim to the Fifth DCA in his supplemental appellate brief. The Fifth DCA affirmed the state circuit court's decision per curiam without written opinion. <u>See</u> Resp. Ex. JJ.

Indeed, Detective Merchant's pre-trial disciplinary file does not meet the <u>Wright</u> standard for newly discovered evidence because Horvatt or his counsel either knew about it or could have known about it with the use of due diligence at the time of trial.[13] <u>See</u> <u>Wright</u>, 857 So. 2d at 861. In addition, because other evidence of Horvatt's guilt was overwhelming, it is unlikely that the evidence of Detective Merchant's disciplinary record would have produced an acquittal. <u>See</u> <u>id.</u> Even if Horvatt could pass the <u>Wright</u> newly discovered evidence test to allow his second or successive motion to be heard, he could not show deficient performance or prejudice under <u>Strickland</u>. Again, the evidence of Horvatt's guilt was overwhelming, even absent the confession.

Upon review of the record, the Court determines that Horvatt's claim in ground three (a) is unexhausted and procedurally defaulted because Horvatt failed to raise this claim in his first motion for postconviction relief in state court, and the claim did not qualify as newly discovered evidence to warrant consideration of a second or successive motion. Horvatt has not pled any cause and prejudice to excuse the default. <u>See</u> <u>Coleman</u>, 501 U.S. at 750. Likewise, he has not pled facts justifying the exceedingly narrow fundamental

---

[13] To the extent Detective Merchant's conduct after Horvatt's conviction generated impeachment evidence, such evidence did not exist at the time of Horvatt's suppression hearing and trial.

miscarriage of justice exception.  See Schlup, 513 U.S. at 327.  The claim in ground three

(a) is due to be denied as procedurally defaulted.[14]

## VIII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Horvatt seeks issuance of a certificate of appealability, the undersigned opines

that a certificate of appealability is not warranted. This Court should issue a certificate of

appealability only if the petitioner makes "a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Horvatt

"must demonstrate that reasonable jurists would find the district court's assessment of

the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282

(2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues

presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v.

Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4

(1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits,

the petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484.

However, when the district court has rejected a claim on procedural grounds, the

petitioner must show that "jurists of reason would find it debatable whether the petition

states a valid claim of the denial of a constitutional right and that jurists of reason would

---

[14] Even if the claim in ground three (a) was not procedurally defaulted at the state circuit court level, Horvatt's belated attempt to present it in his supplemental brief on appeal to the Fifth DCA would likely render it procedurally defaulted, as it was not properly presented to the appellate court.  Assuming, however, that Horvatt could overcome both procedural defaults, this Court would still owe deference under AEDPA to the state court's decision that he met neither prong of Strickland, and his claim would fail.

find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Amended Petition (Doc. 8) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The **Clerk of the Court** is directed to enter judgment denying the Amended Petition (Doc. 8) and dismissing this case with prejudice.

3.   If Horvatt appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.   The **Clerk of the Court** is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 26th day of September, 2017.

MARCIA MORALES HOWARD
United States District Judge

lc22
c:     Clint Horvatt, # 133361
       Counsel of Record